Good morning, your honor. May it please the court, counsel. My name is Kim Driggers. I'm here on behalf of Larry Cooney. I'm an assistant public defender in the Eastern District of Arkansas and I'm so pleased to be here with you today to explain why Larry Cooney's sentence must be overturned. Larry Cooney is sitting in a prison cell right now in Forest City, Arkansas serving a nine-year sentence when he really should be only serving two at best. But in fact, with credit for the good time he's already served, Larry would be out. He would have finished his sentence by now. But Larry's sentencing hearing was riddled with errors and that's why he's serving a nine-year sentence. And I know because I was there. And I'm so glad that I'm here and I can answer your questions and tell you what really happened in that courtroom about a year ago. I identified several errors in the sentencing hearing in my brief, but if it's okay with the court, I really want to focus on the first two and that's the procedural and the substantive error. I really want to talk about what happened in the courtroom that day. I raised an argument about supervised release, but I'm just going to leave that to address all the briefs. What about the appellate waiver? I'm sorry? What about the appellate waiver? Why wouldn't that apply? Well, the appellate waiver applied to Mr. Cooney's original sentencing hearing. Does it say that? Well, it was that case and the plea agreement said... Is this a different case? It is the same case, Your Honor. It's a different framework. It's a different statute that's involved. So I didn't prepare for this, but I'm glad you mentioned it. So when Mr. Cooney was first facing indictment, he was charged and sentenced under the Armed Career Criminal Act. The plea agreement spelled that out. In fact, the parties agreed he was an armed career criminal. That plea agreement had a waiver of an appeal. It also had a waiver of collateral attack, which is a 2255. So for one reason why the appeal waiver doesn't apply here is because the government hasn't enforced all of its provisions. We're here on a 2255 appeal. We could have litigated in the district court whether or not that was waived, but we didn't because everybody knows Mr. Cooney's not an armed career criminal. You cannot hold him to a plea agreement that's unconstitutional. Apparently, the government elected not to enforce it the first time, maybe out of a sense of justice or whatever, but now they are seeking to enforce it. Well, they're seeking to enforce it now, Your Honor, because they know that the sentencing hearing was riddled with error. You can't just selectively decide when you want to enforce your waivers, but even if you could, you couldn't do that here, Your Honor, because Mr. Cooney was serving an illegal unconstitutional sentence. You can't require somebody to waive an unconstitutional sentence. Are there any cases where a court refused to enforce a waiver in a resentencing? There are, Your Honor. In the wake of the Johnson decision, there were several, and I'll be glad to submit a supplemental brief on this, but there were several cases that came before various circuit courts of appeals where USAs were saying, no, we had these waivers in place where they couldn't pursue a 2255 claim, but the courts of appeal ultimately said, no, you can't ever waive your right to an unconstitutional sentence. Justice will not just allow us to pretend that this man is sitting in prison unconstitutionally. You can't do that. So there are plenty of cases, especially recently with regard to Johnson, where plea waivers have not been enforced. And that might mean... I'm not arguing his sentence is unconstitutional, though. I, um, the first go around I was, Your Honor, that's the whole way we got into court again is because his original 15-year sentence was unconstitutional. The plea agreement in that case had a waiver of 2255, but what courts have said is you cannot waive a 2255 when the United States Supreme Court comes out and says your sentence is unconstitutional. So that's why the United States, um, and the court and I elected to go forward and have Mr. Cooney re-sentenced. So my position with respect to your question would be that that plea agreement's out the window. That plea agreement says that Mr. Cooney's an armed career criminal. We know he's not. So we're dealing with different statutory penalties and different charges here. Um, before we get to the merits of my argument about procedural and substantive error, I apologize, the background here, because it can be a little confusing. I think we're pretty familiar with the facts. Okay. Stick with the... Well, then let's get straight... ...showing us what the district court did that we must correct. Let's get straight to the procedural error then, Your Honor. Procedural and structural errors almost always warrant a remand because they are the starting point. They're the benchmark for every sentence. But there are circumstances where they can be harmless. There are, Your Honor. For example, if there's a huge procedural error, an incorrect guideline range, but the sentencing court says, you know what? Irrespective of that range, I'm going to impose sentence X because of all these other factors. Sometimes, and this court in fact has said that it doesn't matter that there was a procedural error because we have enough in the record to know what the judge would have done, no matter what the original There's nothing in the record to say what the court would have done had she considered the correct guideline range. Secondly, Your Honor, I want to point out here... The part of why you think the ultimate sentence is unreasonable is because the court was taking into account the sentence the court thought was the just sentence as opposed to the one dictated by a strict application of guideline principles. Well, Your Honor, we're a little bit hamstrung in our ability to assess the reasonableness of the sentence because we don't have anything to tether that variance to. So, for example, in Molina and even in Gall, the Supreme Court said in order for you to judge whether a substantial variance was reasonable, you have to look at what the guideline range was. Here, I would submit that the guideline range was 21 to 27 months. So then we would have to go back and figure out, well, a nine-year sentence compared to two years, why is that necessary? So what was the district court's procedural error that you're... This is what I really want to talk about, Your Honor. So, like I said, I've been doing this for about 13 years. When I go into court, I'm prepared to make an objection to the sentencing guideline range. And at that point, I'm prepared to sit down and let the government introduce proof. The court then decides whether or not there's enough facts and evidence to support a sentencing enhancement, makes factual findings, and then recalculates the guideline range. In this case, Your Honor, I made an objection. I actually won that objection. But then the United States had an objection and wanted an enhancement. But rather than telling me to sit down and let the prosecution introduce their proof, the judge asked me to preemptively respond to the government's proof. And now, here, in the briefs, the government is saying, well, I'm somehow at fault for not properly preserving or articulating Mr. Cooney's argument. Let's assume the argument's preserved. Assuming the argument's preserved, then we still win on the merits because the transcript that was introduced by me, not the government, the transcript that was introduced by me at the sentencing hearing has enough evidence to show that Mr. Cooney was not in violation of Arkansas state law of aggravated assault. Is this your defense argument that the fact that he fired the weapon was something done to defend others as opposed to commit an assault? That's correct, Your Honor. And I see that my time is winding down. I really want to save some room for rebuttal. So if it's okay with the court, I'll sit down and pass the mic. Thank you. You're the master of your time. Mr. Givens? Thank you, and good morning, Your Honors and Ms. Riggers. And may it please the court, I am Chris Givens, and I'm representing the United States here today. Your Honors, the defendant's 108-month sentence that was handed down by the district court was done after careful consideration of the 3553A factors as well as a proper application of this four-level enhancement. It wasn't procedurally unsound, and it was substantively reasonable. And I can take up the issues as the district court did with the procedural error and then the substantive reasonableness. And, Your Honor, you mentioned that you're going to assume that there was a preservation of the error, of the objection. And I would say that our position is that, in fact, Ms. Riggers did not raise the same argument that she's raising before this court to the district court. That is, the aggravated assault should not have applied because he was acting in defense of others. So we would submit that this is plain error review. However, because we believe that the argument fails on the merits, and Your Honor has assumed that it was preserved, I'll address the merits of the procedural error. In this case, Ms. Riggers has mentioned that the United States did not present any evidence at the resentencing hearing. And that, while it is true that we did not put up a witness, it is not true that the district court had no evidence to consider. And there's case law on this, including U.S. v. Rose. However, the district court could have considered any evidence before it at the earlier hearings. This is done routinely when there's a sentencing after there's been a trial. You don't put on brand new evidence that has already been presented to the court. In this case, there was a day-long motions hearing in which both sides argued the facts of whether or not Mr. Cooney committed an aggravated assault. And at that hearing, the district court heard everything that it needed to hear regarding the facts surrounding how Mr. Cooney came to possess that gun and how he came to commit what would be under Arkansas law, an aggravated assault. So, in this case, the United States has been consistent in saying that he committed an aggravated assault. This is the first time we're hearing the defendant's argument that, well, he may have committed an aggravated assault, but he had a defense to it. Our position, Your Honors, is that the defense, if that was preserved before the district court, is not viable and would have failed if it was brought before the court. And that's because of the simple fact that Mr. Cooney used deadly force. Under Arkansas law, the use of deadly force, it has to be reasonable and not excessive. In this case, and Your Honors are familiar with the facts, but I'll just submit that there was two people that were wrestling around in the mud on the ground. This was not a situation where there were weapons involved. In fact, Mr. Cooney himself stated that when he came out, he didn't see anybody holding bricks. The people were standing up. He fired a shot into the ground. This is the use of deadly force that is excessive and not reasonable. Had we brought this issue up to the district court, they still would have found this four-level enhancement would have applied because the defense was not viable. This is a situation where if we're saying that shooting a gun in a suburban city limits to break up what essentially was a fist fight is an appropriate use of deadly force, then I think society is probably in trouble on that. So while the district court may have said that Mr. Cooney may have believed that his brother was under a threat of serious bodily injury, even if you credit the district court's opinion on that, the use of deadly force under Arkansas law was excessive and not reasonable, and therefore it was procedurally sound to apply the four-level enhancement. Additionally, Mr. Cooney is arguing that the sentence itself is not reasonable, the 108-month sentence. Your Honor, what I'm going to talk about is why that is reasonable, and because it was reasonable, even if your honors believe that there's any procedural error, that error was harmless. So it's undisputed that the recalculated guideline would have only been 30 to 37 months, something like that. Yes, Your Honor, we're not arguing. Now, we did make an objection at the district court level that rape is a violent offense, and it should have been an offense level of 20. However, we're not arguing that on appeal. The court found that it was not, and that goes into the substantive issue because Mr. Cooney is arguing that the court only was given the high sentence because of his dislike of Johnson. Well, in fact, the court credited Johnson and gave the lower guideline range as Mr. Griggs said that her objection was sustained. So 30 to 37 months was the correct guideline sentence. What does the court get from 30 to 37 months up to 108? It got to that, Your Honor, primarily because of Mr. Cooney's significant violent criminal history and the 3553A factors, which it went through in detail. And Mr. Cooney had been convicted of multiple rapes of his biological children. Additionally, he had been strong-arm robbery, assault with a deadly weapon. He was arrested in other rape charges. He was a suspect in a 12-year-old girl's murder. So there was a significant pattern of criminal history that the court considered in looking at Mr. Cooney. There was mental health issues that he had had. His most recent arrest for sexual assault was in 2000. So there was, and the district court discussed all of this on the record. So this sentence was done after careful consideration of what the judge was supposed to consider. And because of that, it is clear that from the record, regardless of what the guideline range would have been, the judge believed 108 months was the appropriate sentence. What was the statutory maximum? The statutory maximum, Your Honor, was 120 months. So this didn't even touch the statutory maximum. And the United States argued that 120 months was appropriate in this case. Frankly, Your Honor, the first time around, the United States argued that 180 months was appropriate under the Armed Career Criminal Act. However, the statutory ceiling of 120 prevented that argument. I noticed in your brief did not respond to Mr. Cooney's argument about the U.S. v. Short case. Your Honor, in these cases, the district court has found that the fact that the sentence was gone up to that percentage is not really a matter for the court to consider. That is a factor to look at. But the court has to look at every issue, all the 35 D3A factors. And that is what the Judge Arnold wrote a number of years ago about looking back too far. In other words, giving, in that case at least, the court, the panel thought that sex offenders have been so remote that it was not proper to consider them in terms of enhancing the sentence. Yes, Your Honor. And I believe in this case, the court considered the fact that it wasn't simply the 30-year-old offenses that was taken into account. Because in that case as well, the defendant and Mr. Cooney were both in prison for a number of years during that time. So you discount the number of years that they've been in prison in looking back that far. Additionally, had those been the only offenses that Mr. Cooney had, that could have been a possible consideration. However, Mr. Cooney had been arrested, as I said, as recently as the year 2000. And so I don't believe that that was looking too far back. And there was other criminal conduct that can account for that. Your Honors, the guideline range if the defendant's objections were sustained would be 21 months. The guideline range that the court imposes 30 months. That nine-month difference, which is what Mr. Cooney is alleging, did not make a difference to the district court's ultimate sentence. Now, Mr. Riggers is correct. The court did not say on the record, I would have imposed a sentence no matter what the guideline range would have been. However, the case laws show that when the sentence is above, in U.S. v. ALT, was a case in which the guideline range that the government and the United States was advocating for were different. Yet the district court gave a sentence below both of those guideline ranges. This case is the same, except in this case, the sentence was above both guideline ranges that the defense is arguing for. So there is no reason to think that Judge Wright would have given a different sentence had that four-level enhancement not been applied. The sentence primarily was argued by Mr. Riggers and Mr. Cooney on the grounds that the only reason Judge Wright gave this sentence was because of the judge's dislike of Johnson and his progeny. And that's simply not the case. It's clear that Judge Wright credited Johnson and gave the guideline range that Mr. Cooney was asking for. She acknowledged how the laws changed as a result of Johnson, acknowledged some frustrations in some of the things that she can and cannot do. However, she applied the law correctly. From there, there was no discussion of Johnson. And in fact, much of Mr. Cooney's criminal history. I believe it's discussed that it was troubling. It was obviously much more than just troubling to both the United States as well as to Judge Wright. So I don't believe that there was any abuse of discretion. And there's cases that show that had this court found that it was the district court reviewed the factors that it was supposed to. That is, that the sentence promotes the law, that it discourages others from similar conduct, that it prevents this defendant from committing similar conduct. Then the district court has done its job. And in this case, Judge Wright was clear on the record that she considered all of the 3553A factors and gave the sentence that she felt was appropriate, which was not the statutory maximum. Why was it appropriate to add the sex offender release conditions on a felon in possession? Yes, Your Honor. The sex offender conditions obviously do not relate to a felon in possession charge. However, they do reasonably relate to his past history. And the district courts are given wide latitude about applying these special conditions. In this case, Mr. Cooney has repeatedly discussed mental health issues as well as problems dealing with his sexual past. Again, I go back to that 2000 arrest where it was found that he was involved with a four-year-old, not convicted, but he was arrested. In this case that, and Your Honor, I would point to cases such as US v. Smart in which that case, when the defendant was a child, he had issues with this and the court found it appropriate to apply conditions. Additionally, these conditions are not a complete ban. He is allowed permission to be around children if he gets prior approval from the probation office. So it's not a complete ban on his liberty and they are reasonably related to his past. And that, Your Honor, frankly, the crimes that he committed, albeit back in the late 1980s, were such a heinous nature and so egregious that they don't go away. And the fact that he spent time, a long time in prison for them, got out of prison, was arrested for similar conduct, those crimes don't go away. And the judge was correct in recognizing that these type of crimes always are going to need conditions to monitor the defendant. Accurately, how much time, in fact, he has been incarcerated as an adult? Your Honor, it's difficult to ascertain under the state sentences because of the parole situations. He was given 20-year sentences back in 1987. I don't have the exact amount of time that he was incarcerated before me. Mr. Givens, you haven't mentioned the waiver. Should I take that to mean you are urging us to get to the merits? No, Your Honor. And I do believe, I want to be honest and concede with the court, I believe that Ms. Driggers accurately summarized some of the procedural history of this. We did challenge this on the waiver issue on the first time around and I'm not abandoning that position. We do believe that the appellate waiver that Mr. Cooney signed on his original plea agreement should have been in effect and we brought that issue before this time. How could it remain in effect when the basic underpinning of it was removed by the change in law? And Your Honor, frankly, that's why I'm conceding. I recognize that argument and the law and the second time around his guideline range was above or his sentence was above the guideline range which eviscerated the waiver provision and so that is primarily why we did not bring it up this time around. I see. So the waiver only applied if he was sentenced within the guideline range? That's our general waiver, yes, Your Honor. Now, the first time we were before this court, he was sentenced within the guidelines. So we believe the waiver provision applied. That said, I recognize the authority that Ms. Driggers has presented and so on this go-around with the Eighth Circuit, we have not challenged that. I'm sorry, you have filed a motion to dismiss this time around, haven't you? No, Your Honor. That was the previous appeal. Okay, my mistake. Thank you. Your Honor, what happened, the previous appeal, we did file a motion to dismiss based on the appellate waiver. The case was permitted to go forward to the Eighth Circuit and then the Eighth Circuit affirmed the United States position that the justification defense does not exist. Then it was come back around on the Johnson issues and we're before this court. We have now filed a motion to dismiss this appeal. Okay. I was under the impression you didn't try to enforce it the first time and are now, but I must have that backwards, huh? I believe so, Your Honor. I don't think I've ever corrected an Eighth Circuit judge before, but I believe so. Fine. Appreciate it. Your Honor, I believe my time is about up unless you have any further questions. I see none. Thank you. Thank you, Mr. Givens. Ms. Griggers, your rebuttal. Thank you, Your Honor. If there's anything I can impart before I leave today, it's this. This court cannot make the same mistake that the district court did. In other words, we can't put the cart before the horse here. We can't start thinking and speculating about, oh, well, would the sentence have been different? Oh, well, what about these other reasons why the judge may have varied upward? We can't do that because we have a procedural error in the calculation of the sentencing guidelines and the citation to alt provided by the government has been overturned by the United States Supreme Court in Melina Martinez. Melina Martinez says you can't start speculating on what could have been if we don't have the benchmark, the load star, the correct sentencing guideline range. So I really want the court to remember that because the government's brief is replete with reasons why the court would have given a nine year sentence. I admit that. And he has a terrible criminal history. What's the procedural error? The error, Your Honor, is that the government was not required to put on proof when advocating for sentence enhancement. And even assuming there was proof in the transcript, the court did not apply the correct legal standard. The court was looking to the federal justification defense to a charge of felon in possession of a firearm and saying, oh, well, Mr. Cooney could have used a weapon other than a firearm. Oh, well, maybe the victim wasn't in as much danger as Mr. Cooney perceived him to be. All these factors that apply to a federal defense of justification. That's the wrong standard. The court should have looked to the state law. And in fact, the state law on aggravated assault says as an element of the offense that it doesn't apply if somebody is possessing a weapon to defend somebody else. The government in their brief urges this court to look to the affirmative defense of justification. But that doesn't apply here. The Arkansas law says, no, the government has to disprove all of the elements that may apply here, including including justification. They didn't do that. And now they're saying, oh, well, Mr. Riggers is somehow at fault for not pointing to the state law. But with all due respect, Your Honor, we're not going to get in the business of reminding the government of the elements they have to prove, whether it be at a sentencing hearing or at a jury trial. The defense has no burden, Your Honor. We sit there and we defend based on what is introduced as evidence. This court would have no evidence before it if it had not been for me introducing the transcript. And by doing that, I am raising the question about whether or not aggravated assault even applied here. So that's the error, Your Honor, is in that first calculation of 2k point enhancement. The guideline range should have remained at 21 to 27 months. Mr. Riggers, the government did, in fact, file a motion to dismiss in this case, didn't they? Yes, Your Honor. And it's 16-4447 in this case. Yes, Your Honor. And that I'm reading doesn't include something that says if he's sentenced above the guideline range, it doesn't apply. I was not part of that plea agreement, Your Honor, so I can't speak to what's in it right now. But I think you filed a response to the motion to dismiss. I did. And I will still stand on my position, which is that that plea agreement went out the window when the Armed Career Criminal Act went out the window. The statutory penalties are different. The guideline range is different. I understand that argument, but there was, in fact, one. There is, Your Honor. To Mr. Givens' credit, he did not litigate this appeal. He wasn't there at this hearing. And he was in on this long before I was, but it's easy to confuse the issues. I was beginning to think I was losing my mind. No. Your Honor, before I sit down, I just want to mention that Mr. Cooney was sentenced to nine years because there was a fight in his front yard involving his 55-year-old brother who was being clobbered, not my term, the district court's term, by a 19-year-old. People told Mr. Larry Cooney, go inside and get the weapon to break up this fight. For that, he was sentenced to 15 years. That sentence was unconstitutional. He came back and he got nine years. I'm urging this court to recognize that that sentence, too, is not fair. It's not just it cannot stand because there was improper burden shifting. There was a miscalculation in the guidelines. There was failure to hold the government to its burden of proof. And we're not able to assess the reasonableness of this huge variance. To go from 21 to 27 months to nine years based on a conviction that's nearly older than I am. I understand that there were terrible crimes that turned to break up a fight. It's just not reasonable here, Your Honor. And perhaps we would be able to explain more or know more about this case. If you succeeded and this case was remanded, would you in essence be able to litigate the question of the availability of the defense in Arkansas? Yes, Your Honor. If we were to go back, what would happen is I would file a written objection. The United States would be required to put on proof. They could introduce the testimony from that 2013 hearing if they wanted to. I understand that. Or they could put on additional proof. But at that point, then I would know what to respond to. I could file a brief. I could point to certain areas of the Arkansas statute that would support my argument. And then the judge would have a ruling. And then if I needed to appeal, we would come back here and the court would have factual findings and an application of the correct legal standard. So what new evidence would come in in such a proceeding that's not already in the record from prior? I don't know, Your Honor. That's not my burden. It's the government's burden to introduce that evidence. I'm not really sure what they would prove. I know that they would probably look to the Arkansas statute and walk through all those elements. What was the district court's specific response to your argument about the Arkansas statute? She did not. I did not make an argument to the Arkansas statute, Your Honor. That was not my role. The United States asked for a sentencing enhancement. And at that point, they should have put on proof. But the court asked me to preemptively respond to something that had not been in evidence. Without this court, I couldn't could not the courts who is body take all that into account? Yes, Your Honor. If the court had applied the correct legal analysis, but she didn't. She didn't even look to the Arkansas statute. That wasn't brought up by the government. They were all operating under the umbrella and under the assumption that there were that the defense of justification under federal law is what applied. And I understand that because that's what was litigated pretrial. But it's sentencing. It's a different enhancement. We were arguing state law, not federal law. Your brief is very put it this way. It's highly critical of the district court. I don't know that it really helps your position when you said that this court statements were merely a ruse. I guess that's your view of the case. Your Honor, I've been doing this 13 years. I handled every single Johnson case for the Eastern District of Arkansas. This is the only case that got scheduled for a hearing. And I understand why now. And I don't think that I'm embellishing when I call it a race. Thank you. Thank you, Mr. Griggers. Court wishes to thank both counsel for your presence and the argument you provided to the court and the briefing you've